### CALEB M. AMES *vs.* HENRY CHEW & Trustee.

Money deposited in a bank by a married woman who, with her husband's consent, lives separate from him, and is not supported by him, is his money, although it is deposited in her name, and he makes no attempt to obtain possession of it. His creditors may attach it by the trustee process, and they will hold it, although the wife obtain a decree of divorce from bed and board for a cause that existed before such process was served.

THE question whether the Savings Institution in Salem was chargeable as trustee of the principal defendant, was submitted to the court on the following facts : In July 1832, Venus Chew, wife of said defendant, deposited $ 50 in said institution, and took therefor a deposit book in her own name. She after- wards made three deposits, of $10 each, the last of which was on the 20th of October 1836 ; and she also, in her own name, drew small sums from said institution, from time to time, till August 1841.

The defendant and said Venus intermarried in 1802, and lived together until 1820, when they separated. They remained separate until 1837 or 1838, when they came together again. On the 14th of December 1841, said Venus obtained a divorce

Ames *v.* Chew & Trustee.

from the bed and board of said Henry, for cruel treatment re-
ceived from him on the 13th of September 1841.   On the 17th
of said September, said Henry, by an advertisement in the Sa-
lem Gazette, forbade all persons to harbor or trust said Venus
on his account.

While the said Henry and Venus lived apart, neither of them
did any thing for the support of the other ; and said Henry never
made any deposit in said institution, nor drew any money there-
from.   He never attempted to exercise any control over said
deposits, made by said Venus, until after the service of the writ
in this action, which was on the 16th of September 1841.   He
afterwards drew an order, dated October 1st 1841, which was
left at the office of said Savings Institution, directing the amount
of said deposits to be paid to the plaintiff.

*Ward*, for the plaintiff.

*Roberts*, for the trustee.

DEWEY, J.   The rights of the husband over the acquisitions
of the wife are not affected by a temporary separation of the
parties, voluntary on the part of both, and adopted for their
comfort, convenience or interest, as the case may be ; and
while thus situated, the legal disabilities and legal privileges, in-
cident to the relation of husband and wife, continue unaltered.   In
case of the husband's abjuration, or exile from the country, the
law does indeed give to the wife the protection and power inci-
dent to a feme sole.   It does this from the necessity of the case.
Her legal protector being civilly dead, she resumes her individ-
ual legal capacity to enter into contracts, to make acquisitions
of property, and to sue and be sued.   *Gregory* v. *Paul*,
15 Mass. 31.   Rev. Sts. *c.* 77, § 4.

The same principle is also extended to the case of a married
woman who, driven by cruelty and neglect of the husband, to
abandon his house, and to provide for herself, should come into
this Commonwealth, leaving her husband in another State, and
here maintain herself as a single woman, the husband having
utterly abandoned her.   *Abbot* v. *Bayley*, 6 Pick. 89.

Our Rev. Sts. *c.* 77, § 18, have gone further, and provided
that when any married woman shall come from any other State

or country into this State, without her husband, he having never lived with her in this State, she may contract, and may sue and be sued as a feme sole.

This case, as disclosed in the answer of the trustee, shows that a sum of money was deposited in the savings bank by the wife of the principal defendant, in her name, she and her husband living separate at the time, but both residing within the Commonwealth, and for aught that appears, in the same neighborhood. *Primâ facie,* such a deposit would enure to the benefit of the husband and might well be attached by the trustee process, by his creditor. To avoid such a result, the trustee must show, that as to this deposit the wife was to be considered a feme sole, and that the marital rights of the husband were not in force. And it is attempted to maintain this position by the facts, that the parties did not live together, that they had been separated for many years previous ; that while thus living apart, neither of them had contributed any thing toward the support of the other ; and that the husband had not exercised any control over her deposits in the savings bank.

Cases have occurred, as has been already suggested, of separation under such circumstances of desertion, and indicating so manifestly a renouncement of all marital duties and liabilities, that the law has invested the wife with legal capacity to act in her own name, and to acquire and hold property in her own right. But they have been cases where the husband was without the Commonwealth ; cases where the court could not, by its process, compel the husband to pay the expenses, incident to her necessary support, to those who might furnish it, nor enforce the payment of any alimony that might be allowed upon her application for a divorce.

The law does not allow, and public policy strongly forbids, that by a mere voluntary separation of the parties, both continuing to reside here, they should be reinstated in their separate legal interests and legal capacities, by means of such separation. Indeed if the husband had by his extreme cruelty driven her from his house, and left her without any means of support, yet if both parties continued to reside here, she would still remain under the

legal disabilities of a feme covert, according to the doctrine stated in the case of *Abbot* v. *Bayley*, before cited.

With the great facilities, now existing under our statutes, for procuring a legal separation, either by a divorce *a vinculo*, or *a mensâ et thoro*, extending to every case which can possibly justify or require such separation, there seems to be no good reason for any further extension of the doctrine of the power of acquisition, by the wife, of the legal capacity and legal rights of a feme sole, by reason of her husband's acts, and independent of that formal divorce which the law in its wisdom has provided as the proper mode of separating husband and wife. It seems to us, therefore, that the money in the hands of the trustee is to be considered in the same legal view as if those parties had been living together as husband and wife, at the time of making the deposit, and the husband had assented to such deposit by the wife in her own name. Such investment in the name of his wife, by the husband directly, or by his permission, if of property legally his by acquisition, and holden really in his own right, could not be legally made for the benefit of the wife. Such investment in her name, by his consent, might bar the heirs of the husband, and might confer upon her all the legal rights of survivorship, as regards the claims of such heirs ; but it would be invalid as against the creditors of the husband. Although deposited in the name of the wife, it is the husband's money, and may be demanded by him, or taken by his creditors.

But if we were to give greater effect to this deposit, and consider it as the wife's chose in action, and allow her the full benefit of the doctrine of right by survivorship, there would still be difficulties in the way, if we attempt to sustain her right to the money now in controversy upon that ground ; as no case exists for the application of the doctrine of survivorship. Before the dissolution of the marriage by death or divorce, the wife's choses in action, if unnegotiable, as the present credit in the hands of the trustee is, may be attached by the creditors of the husband, by the trustee process, and they may thus compel its reduction to possession for their benefit. *Holbrook* v. *Waters*, 19 Pick 354. *Wheeler* v. *Bowen*, 20 Pick. 563.

The husband is yet living, and there has been no divorce from the bond of matrimony. It is true that there has been, since the attachment, a divorce from bed and board, but not accompanied with a decree vesting in the wife her choses in action, or other personal property. This would present an insuperable difficulty to the supporting of the wife's claim to this money, treating the deposit as a chose in action of the wife.

It seems to us, therefore, that the money deposited in the savings bank, whether considered as the money absolutely of the husband, as we hold it to be, or considered as a chose in action of the wife, was liable to the trustee process, at the suit of the creditors of the husband, and that no subsequent proceedings, which have taken place, have defeated the attachment of it in the hands of the trustee.